862 F.2d 320
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Maria T. ALEXANDER, Petitioner,
v.
OFFICE OF PERSONNEL MANAGEMENT, Respondent.
 No. 88-3025.
 United States Court of Appeals, Federal Circuit.
 Oct. 7, 1988.
 
 Before EDWARD S. SMITH, NIES and MICHEL, Circuit Judges.
 NIES, Circuit Judge.
 
 DECISION
 
 1
 Maria T. Alexander seeks review of the final decision of the Merit Systems Protection Board, Docket No. DC08318610407 (Oct. 31, 1986), affirming the Office of Personnel Management's (OPM) reconsideration decision terminating the survivor annuity benefits she had been receiving as the spouse of John W. Alexander, Jr., a deceased, retired, federal employee and awarding such benefits to another claimant, Sheila Cusack Alexander. We reverse.
 
 OPINION
 
 2
 Upon the death of John Alexander, Jr. on August 14, 1983, OPM awarded a survivor annuity, under 5 U.S.C. Sec. 8341 (1982), to his putative widow, Maria, whom he had designated as his beneficiary. In May, 1985, Sheila Cusack Alexander, through solicitors in London, wrote to OPM claiming that she was entitled to the benefits as a prior undivorced spouse.[1]
 
 
 3
 In its initial decision, OPM determined that Sheila had not established her claim to be John's legal surviving widow within the meaning of section 8341. OPM ruled that, under Maryland law, the latest marriage is presumed valid, and, in any event, an earlier undivorced spouse may be estopped from asserting spousal rights where the earlier spouse, having knowledge of a subsequent marriage, does not act promptly to challenge that marriage.[2] OPM had required that Sheila establish (1) that she had not been divorced from John and (2) that she did not know of John's subsequent marriage to Maria. With respect to (2), OPM required an affidavit from Sheila that she did not know of John's remarriage. Although no affidavit was filed, upon reconsideration OPM preemptively reversed itself finding that Sheila and John had not been divorced and that Sheila did not know of John's marriage to Maria. The annuity was then awarded to Sheila.
 
 
 4
 In Maria's appeal to the board, the board upheld OPM's decision including its finding that Sheila "did not know" of John's remarriage and, thus, Sheila was not estopped from establishing the validity of her own marriage.
 
 
 5
 Although the record may be sufficient to show that Sheila and John were not divorced at the time of his marriage to Maria, there is no evidence in the record to support either OPM's or the board's finding that Sheila did not know of John's remarriage before his death. In response to OPM's requirement that Sheila file an affidavit attesting to her lack of knowledge, Sheila's solicitors responded questioning the purpose of an affidavit, questioning how benefits could, in any event, be paid to a spouse of a "bigamous" marriage, and stating that Sheila did not know of John's marriage.
 
 
 6
 No doubt the solicitors' statement that Sheila did not know of the marriage reflects the information given by Sheila to them. Under the circumstances that Sheila was available to give her own affidavit, however, there was no justification for accepting the unsworn, hearsay statements of her solicitors. The board's error was then compounded by its refusal, upon Maria's petition for review, to accept newly discovered evidence that Sheila did, indeed, know of John's marriage to Maria. Maria submitted an affidavit from John's father in which he stated that several times prior to his son's death, he had told Sheila on the telephone about his son's subsequent marriage to Maria when Sheila called urging him to persuade John to send her money. The explanation given by him as to why he refrained from telling Maria about these calls is reasonable. The board abused its discretion in refusing to consider this evidence. See 5 U.S.C. Sec. 7703(c) (1982). Even without this evidence, however, the unverified report of Sheila's self-serving statement is no evidence to support Sheila's claim that she did not know of John's remarriage. Manifestly, the record is inadequate to justify revocation of Maria's benefits on that ground.
 
 
 7
 Because we conclude that the factual predicate for the decision revoking Maria's annuity is unsupported by substantial evidence, the decision of the board is reversed. See id.; Hayes v. Department of the Navy, 727 F.2d 1535, 1537 (Fed.Cir.1984).
 
 
 
 [1]
 It is not clear on what basis Sheila would be entitled to an annuity if Maria's claim were not upheld. Benefits are not automatically given to all surviving spouses. John specifically elected no survivor benefits during the period from January 1, 1976, until January 1, 1982, and he received a refund in 1982 of deductions for that period which were made because he had designated a previous spouse, Mai Xuang, whom he divorced in 1975. He married Sheila on July 14, 1976, and there is no evidence of record that Sheila was ever designated, much less timely designated, for survivor benefits
 
 
 [2]
 Maria does not challenge OPM's interpretations of Maryland law. Thus, the question of the correctness of OPM's interpretations is not before us in this appeal, and we expressly do not rule on them